IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **JOSHUA COGHILL**, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) No. 17-cv-2528-JPM-tmp<br>)<br>) |
| **TENET HEALTHCARE CORPORATION, and AMISUB (SFH), INC., d/b/a Saint Francis Hospital** *A Wholly Owned Subsidiary of Tenet Healthcare Corporation;* | )<br>) JURY TRIAL REQUESTED<br>)<br>) |
| Defendants. | |

**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES**

Comes now the Plaintiff, Joshua Coghill, individually and on behalf of all others similarly situated, to file this First Amended Complaint for Injunctive Relief and Damages.

**I. PARTIES**

1.  Plaintiff Joshua Coghill (hereinafter referred to as "COGHILL") is an adult resident citizen of DeSoto County, Mississippi.

2.  Upon information and belief, Defendant TENET HEALTHCARE CORPORATION (hereinafter "TENET") is a corporation transacting business in the state of Tennessee and maintains its principle offices at 1445 Ross Avenue, Suite 1400, Dallas,

1

TX 75202, and may be served through its acting CEO, Mr. Ronald Rittenmeyer, at that address.

3. Upon information and belief, Defendant, AMISUB (SFH), INC., d/b/a Saint Francis Hospital (hereinafter "AMISUB") is a corporation duly authorized to transact business and transacting business in the state of Tennessee whose agent for service of process according to the Tennessee Secretary of State's office is CT Corporation located at 800 South Gay Street, Suite 2021, Knoxville, Tennessee 37929.

4. Upon information and belief, Defendant TENET, directly or indirectly, through its wholly owned subsidiaries and affiliates, owns and/or operates and/or manages and/or controls AMISUB as well as 76 other hospitals, 20 surgical hospitals and over 460 outpatient centers and other companies providing healthcare services as well as healthcare business process services and other entities in Alabama, Arizona, California, Florida, Illinois, Massachusetts, Michigan, Missouri, North Carolina, Pennsylvania, South Carolina, Tennessee and Texas (hereinafter "TENET HOSPITALS").

5. As a corporation, TENET and its subsidiaries and affiliates, including but not limited to AMISUB and TENET HOSPITALS, operate through individual agents and/or employees and the doctrines of agency, respondeat superior and master/servant are hereby relied upon herein. Hereinafter, TENET, AMISUB, TENET HOSPITALS and all subsidiaries, affiliates, agents and/or employees of TENET, AMISUB, and TENET HOSPITALS will be referred to collectively as "DEFENDANTS".

## II. JURISDICTION AND VENUE

6. This case was originally filed in the Chancery Court of Shelby County, Tennessee and was removed to this Court pursuant to the U.S. Class Action Fairness Act

of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711–1715, in that members of the Class are residents of states different than the DEFENDANTS, and, on information and belief, the amount in controversy exceeds $5,000,000.00 so this Court has already ruled that it has jurisdiction over the subject matter of this proceeding.

7.  Venue is proper in the Western District of Tennessee, Western Division pursuant to 28 U.S.C. §1391(a), (b), and (c) in that DEFENDANTS conduct regular business within the State of Tennessee and within the District, and the transaction that is the basis of Plaintiff's complaint occurred within the District.

8.  This cause of action arises out of acts that occurred in Memphis, Shelby County, Tennessee.

### III. FACTS AS TO PLAINTIFF JOSHUA COGHILL

9.  On or about October 7, 2015, COGHILL received medical services at the emergency room of Saint Francis Hospital – Park Avenue, which is owned and operated by Defendant AMISUB and/or DEFENDANTS.

10. On this same date, COGHILL informed DEFENDANTS that he had health insurance through UnitedHealthcare and provided AMISUB and/or DEFENDANTS with the necessary health insurance information for AMISUB and/or DEFENDANTS to process his claim for medical benefits.

11. AMISUB and/or DEFENDANTS charged $7,076.46 for the medical services it rendered to COGHILL.[1]

12. On or about October 23, 2015, AMISUB and/or DEFENDANTS filed a Notice of Hospital Lien for the total amount of $7,076.46 in the Circuit Court of Shelby

---

[1] See Saint Francis bill attached hereto as "Exhibit A".

County, Tennessee.[2]

13. Upon information and belief, DEFENDANTS never filed COGHILL's claim with UnitedHealthcare.

14. Instead, upon information and belief, DEFENDANTS contacted COGHILL telephonically a number of times regarding his account and represented to COGHILL that $7,076.46 was owed on his account.

15. On or about March 21, 2016, COGHILL faxed his insurance card to the DEFENDANTS and specifically requested that the DEFENDANTS file his charges with UnitedHealthcare.[3]

16. Upon information and belief, DEFENDANTS never filed COGHILL's claim with UnitedHealthcare despite being specifically asked to do so, and never notified COGHILL of this fact.

17. On or about October 20, 2016, DEFENDANTS sent correspondence to COGHILL regarding his account.[4]

18. In December of 2016 COGHILL reached a monetary settlement with the liability insurance carrier for the opposing driver, State Farm, in the amount of $23,000.00.

19. On or about February, 17, 2017, DEFENDANTS sent correspondence to COGHILL stating the current balance of his account was $7,076.46 and that the DEFENDANT(S) "has a lien filed on the above-referenced account and will expect

---

[2] See Notice of Hospital Lien, attached hereto as "Exhibit B".
[3] See Correspondence dated March 21, 2016, attached hereto as "Exhibit C".
[4] See Correspondence dated October 20, 2016 attached as "Exhibit D".

4

compliance with the Tennessee hospital lien statute."[5]

20. Ten days later, on or about February 27, 2017, COGHILL received a summary of payments made by his health insurance carrier, UnitedHealthcare, which showed no payment to DEFENDANTS on COGHILL's emergency room bill.[6]

21. COGHILL then tried to submit the DEFENDANTS bill to his insurance company himself, but discovered that since the charges were not submitted in a timely manner (within one year) that UnitedHealthcare cannot and will not process them.

22. Even though the claim was settled, State Farm required full satisfaction of DEFENDANTS' lien before they would disburse any funds; therefore, as part of the settlement State Farm issued a check payable directly to DEFENDANTS in the amount of $7,076.46 in full satisfaction of their Hospital Lien and a separate check payable to COGHILL and his attorney for the remaining $15,923.54.

23. Since the filing of this lawsuit, AMISUB has filed a Release of Hospital Lien for COGHILL and issued a check directly to James E. Blount, IV in the amount of $3,858.93; presumably for Charles Evans.

24. At no time did the DEFENDANTS amend the Hospital Lien to reflect COGHILL's health insurance carrier or the true amount of the debt owed by COGHILL to DEFENDANTS.

### IV. FACTS AS TO THE PLAINTIFF AND ALL CLASS MEMBERS

25. The DEFENDANTS furthered its own economic interest when it agreed in its contracts with health insurers to discount its charges for the insurers' patients.

26. With regard to COGHILL and the putative class members "reasonable

---

[5] See Correspondence dated February, 17, 2017 attached as "Exhibit E".
[6] See Correspondence dated February 27, 2017 attached as "Exhibit F".

5

charges" are the charges agreed to by the insurance company and the DEFENDANTS.

27. Based on its contracts the DEFENDANTS could charge COGHILL and class members no more than the amounts permitted by the contracts applicable to their care.

## V. FIRST CAUSE OF ACTION

### *Unjust Enrichment*

28. COGHILL repeats and re-alleges each of the foregoing allegations of this Complaint with the same force and effect as if fully set forth herein.

29. COGHILL and proposed class members conferred a benefit upon DEFENDANTS by availing themselves of DEFENDANTS' medical services. When the DEFENDANTS charged and received monies in excess of the amounts it had previously agreed to charge for medical services (i.e "reasonable charges" pursuant to Tennessee law), DEFENDANTS denied them the rates it had previously agreed to charge for those services.

30. It would be inequitable to allow the DEFENDANTS to retain any monies above the amounts it had agreed to accept for these services.

31. Any monies DEFENDANTS received above the amounts it had agreed to charge, constitute unjust enrichment and COGHILL and class members are entitled to a full refund of any such excess payments with interest.

## VI. SECOND CAUSE OF ACTION

### *Breach of Contract between the Defendant and the Patient*

32. COGHILL repeats and re-alleges each of the foregoing allegations of this Complaint with the same force and effect as if fully set forth herein.

33. Upon information and belief, the DEFENDANTS entered and still enters into a contract entitled, *Conditions of Service,* with each patient or individual responsible for paying the DEFENDANTS' bills for services. [7]

34. Upon information and belief, each of the above contracts contains the following language in a section entitled, FINANCIAL OBLIGATIONS:

> I agree that if this account results in a credit balance, the credit amount will be applied to any outstanding accounts, either current or bad debt.

35. The above language imposes no duty on the COGHILL and class members to request refunds of over payments.

36. Pursuant to the above language, the DEFENDANTS have a duty to refund the moneys without a request from COGHILL or class members.

37. The DEFENDANTS' failure to take any action to refund the overpayments and/or to timely submit patient's charges to their health insurance company constitute a continuing breach of its contracts with COGHILL and class members.

## VII. THIRD CAUSE OF ACTION

*Violation of the Tennessee Consumer Protection Act of 1977,*
*T.C.A. §47-18-101, et seq. by Denying Patients the Benefits*
*of Agreements with Insurers to Accept Negotiated Prices for Services*

38. COGHILL repeats and re-alleges each of the foregoing allegations of this Complaint with the same force and effect as if fully set forth herein.

39. Upon information and belief, the DEFENDANTS agreed with their health insurers to accept a discounted amount as payment in full for their covered services.

---

[7] See attachment G.

7

40.     Through various billing policies, including balance billing and substitute billing as those terms are defined by the Tennessee courts, the DEFENDANTS systematically charged and received payments in excess of the amounts it agreed to charge insured patients.

41.     Through various billing policies, including balance billing and substitute billing as those terms are defined by the Tennessee courts, the DEFENDANTS systematically charged and received payments in excess of the amounts it agreed to charge insured patients and damaged COGHILL and the Class Members by:

    a.    **T.C.A § 47-18-104(b) (2)** Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services. This subdivision (b)(2) does not prohibit the private labeling of goods and services;

    b.    **T.C.A § 47-18-104(b) (4)** Using deceptive representations or designations of geographic origin in connection with goods or services;

    c.    **T.C.A § 47-18-104(b) (11)** Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

    d.    **T.C.A § 47-18-104(b) (12)** Representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law;

    e.    **T.C.A § 47-18-104(b) (14)** Causing confusion or misunderstanding with respect to the authority of a salesperson, representative or agent to negotiate the final terms of a consumer transaction;

    f.    **T.C.A § 47-18-104(b) (15)** Failing to disclose that a charge for the servicing of any goods in whole or in part is based on a predetermined rate or charge, or guarantee or warranty, instead of the value of the services actually performed;

42.     By charging COGHILL more than the price he had negotiated with the insurers, the DEFENDANTS engaged in an unfair and/or deceptive trade practice by:

    a.    **T.C.A § 47-18-104(b) (2)** Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services. This subdivision (b)(2) does not prohibit the private labeling of goods and services;

8

  **b.** **T.C.A § 47-18-104(b) (4)** Using deceptive representations or designations of geographic origin in connection with goods or services;
  **c.** **T.C.A § 47-18-104(b) (11)** Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;
  **d.** **T.C.A § 47-18-104(b) (12)** Representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law;
  **e.** **T.C.A § 47-18-104(b) (14)** Causing confusion or misunderstanding with respect to the authority of a salesperson, representative or agent to negotiate the final terms of a consumer transaction;
  **f.** **T.C.A § 47-18-104(b) (15)** Failing to disclose that a charge for the servicing of any goods in whole or in part is based on a predetermined rate or charge, or guarantee or warranty, instead of the value of the services actually performed;

43. By intentionally withholding and not submitting claim information on patient accounts to a patient's health insurer in a timely manner and thereby causing the patient to lose coverage, the DEFENDANTS engaged in an unfair and/or deceptive trade practice by:

  a. **T.C.A § 47-18-104(b) (2)** Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services. This subdivision (b)(2) does not prohibit the private labeling of goods and services;
  b. **T.C.A § 47-18-104(b) (4)** Using deceptive representations or designations of geographic origin in connection with goods or services;
  c. **T.C.A § 47-18-104(b) (11)** Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;
  d. **T.C.A § 47-18-104(b) (12)** Representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law;
  e. **T.C.A § 47-18-104(b) (14)** Causing confusion or misunderstanding with respect to the authority of a salesperson, representative or agent to negotiate the final terms of a consumer transaction;
  f. **T.C.A § 47-18-104(b) (15)** Failing to disclose that a charge for the servicing of any goods in whole or in part is based on a predetermined rate or charge, or guarantee or warranty, instead of the value of the services actually performed;

44. COGHILL brings this count as an individual claim.

## VIII. PUNITIVE DAMAGES

44. COGHILL repeats and re-alleges each of the foregoing allegations of this Complaint with the same force and effect as if fully set forth herein.

45. Upon information and belief, the DEFENDANTS are aware of the Tennessee Supreme Court decision in *Diane West et al. v. Shelby County Healthcare Corporation d/b/a Reginal Medical Center at Memphis*, W2012-00044-SC-R11-CV (Tenn.2014) [8] and rather than changing its policies the DEFENDANTS continue this unlawful practice in its attempt to retain its ill-gotten gains.

46. DEFENDANTS conduct in failing to follow the law as set out in *Diane West et al. v. Shelby County Healthcare Corporation d/b/a Reginal Medical Center at Memphis*, W2012-00044-SC-R11-CV (Tenn.2014) is intentional as that term applies to liability for punitive damages.

47. DEFENDANTS' conduct in failing to timely submit COGHILL's and class members claims to their health insurers even after being specifically requested in writing is intentional as that term applies to liability for punitive damages.

48. DEFENDANTS' conduct in failing to take steps to refund the above overpayments to its patients is intentional as that term applies to liability for punitive damages.

## IX. CLASS ACTION ALLEGATIONS

### Definition

---

[8] See attachment H.

49. COGHILL brings this action on behalf of himself and all other similarly situated individuals who have been charged for and who paid a fee for services provided by the DEFENDANTS where the fee paid was in excess of a pre-negotiated fee set between the DEFENDANTS and an insurer or other intermediate entity providing healthcare insurance to the individual(s).

### Numerosity

50. Upon information and belief, the number of persons adversely affected by this practice reaches at least into the hundreds each year.

51. The members of the class are readily ascertainable but are so numerous that joinder is impractical.

52. COGHILL is a member of the class and/or subclasses he seeks to represent.

### Common Questions of Law and Fact

53. There are questions of law and fact common to the class, including:

   a. Whether the DEFENDANTS engaged in the conduct alleged herein;

   b. Whether there is statutory or legal authority for DEFENDANTS actions as alleged herein;

   c. Whether the DEFENDANTS acted without statutory or legal authority in committing the acts alleged herein;

   d. Whether the members of the Plaintiff class and/or subclasses have sustained damages and what is the proper measure of damages;

  e. Whether or not it is appropriate to enjoin further transactions of this nature;

  f. Whether punitive damages should be awarded in accordance with the provisions of Tennessee law;

  g. Whether or not it is appropriate to order the DEFENDANTS to make additional disclosures to patients concerning its business practices and the patients' rights.

<u>Typicality</u>

54. COGHILL's claims are typical of the claims of members of the class and/or subclasses in that COGHILL and class members have all been assessed and / or paid monies to DEFENDANTS in excess of the amounts the DEFENDANTS had agreed to accept for providing those services.

<u>Adequate Representation</u>

55. COGHILL will fairly and adequately protect the interests of each member of the class and has retained counsel competent and experienced in complex class actions.

<u>Rule 23 Certification</u>

56. Class certification is appropriate as the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the DEFENDANTS.

57. Class certification is appropriate as adjudication with respect to individual members of the class could, as a practical matter be dispositive of the interests of other

members not parties to the adjudications or could substantially impair or impede their ability to protect their interests.

58. Class certification is appropriate because the DEFENDANTS have acted or refused to act and may still be acting on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

59. Class certification is appropriate because questions of law or fact common to the Plaintiff class and subclasses predominate over any questions affecting only individual members and a class action is superior to any other available method for the fair and efficient adjudication of this controversy.

60. COGHILL seeks injunctive relief in the form of an order requiring the DEFENDANTS to charge consumers/patients no more than the pre-negotiated fees outlined above and an order requiring the DEFENDANTS to fully inform patients of their rights.

### Common Questions of Law and Fact

61. Class certification of the Plaintiff class and/or subclasses is appropriate because common issues of law and fact relative to the DEFENDANTS' conduct predominate over individual issues.

### Superiority

62. A class action is superior to individual litigation because thousands of separate lawsuits would magnify the delay and expense for the parties and the courts. By contrast the class action device presents far fewer management difficulties and provides

13

the benefits of unitary adjudication, economies of scale, and comprehensive supervision in a single court of law.

### X. FRAUDULENT CONCEALMENT, CONTINUING VIOLATIONS AND EQUITABLE TOLLING

63. The DEFENDANTS fraudulently concealed the true nature of these charges from COGHILL and other class members.

64. Any applicable statutes of limitation have been tolled by DEFENDANTS affirmative acts of fraudulent concealment and continuing misrepresentations, as the facts alleged above reveal. Through such affirmative acts of fraudulent concealment, and continuing material non-disclosures, DEFENDANTS have been able to conceal from COGHILL and the public the truth about its practices, thereby tolling the running of the applicable statutes of limitation.

65. COGHILL and the Proposed Class could not reasonably have discovered DEFENDANTS wrongful conduct as alleged hereinabove absent this litigation.

66. The DEFENDANTS are estopped from relying on any statute of limitations defense because of its unfair or deceptive conduct.

67. Because of the continuing nature of the DEFENDANTS' actions and affirmative acts of concealment, COGHILL asserts the tolling of any applicable statutes of limitations affecting their claims.

### PRAYER FOR RELIEF

WHEREFORE, COGHILL on behalf of themselves and all others similarly situated, pray for judgment as follows:

A.  That the Court enter an Order(s) certifying this case as a class action, or as appropriate subclass actions and designating COGHILL as the class representative and designating counsel as class counsel.

B.  That the Court adjudge that the DEFENDANTS conduct constitutes a breach of its duty to their patients and a breach of its contracts with patients.

C.  That the Court adjudge that DEFENDANTS have received monies to which they are not entitled and are unjustly enriched.

D.  That the Court require the DEFENDANTS to refund any and all excess monies it has ever collected in the course of its unlawful conduct to COGHILL and Class Members by sending full refunds with interest to the patients' last known addresses.

E.  That the Court award punitive damages to COGHILL and Class Members as a result of the DEFENDANTS willful, intentional, and/or reckless conduct.

F.  That the Court enter a permanent injunction prohibiting the DEFENDANTS from engaging in the improper conduct alleged herein and other such injunctive and declaratory relief against the DEFENDANTS as might be appropriate;

G.  For the costs of the suit, including reasonable attorney fees.

H.  For such other relief, including pre- and post-judgment interest, as the Court deems just and proper.

PLAINTIFF RESPECTFULLY REQUESTS TRIAL BY JURY

**DATED** this 9th day of January, 2018.

Respectfully submitted,

*/s/ Benjamin L. Taylor*
BENJAMIN L. TAYLOR (TN 021272)
961 Main Street

15

Southaven, MS 38671<br>
(662) 342-1300<br>
ben@taylorjonestaylor.com<br>
*Attorney for Joshua Coghill*

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2018 a true and correct copy of the foregoing was served via ECF, electronic mail and first-class U.S. Mail, postage prepaid upon the following:

> David A. King (TN 011559)
> David R. Esquivel (TN 021459)
> Michael A. Cottone (TN 033253)
> BASS, BERRY & SIMS PLC
> 150 Third Avenue South, Suite 2800
> Nashville, TN 37201
> Telephone (615) 742-7890
> dking@bassberry.com
> desquivel@bassberry.com
> michael.cottone@bassberry.com
>
> *Attorneys for AMISUB*

> James E. Blount, IV (19301)
> 1950 West Poplar
> Collierville, Tennessee 38017
> (901)529-9377
> jimmy@blountfirm.com
>
> *Attorney for Charles Evans*

/s/ Benjamin L. Taylor<br>
BENJAMIN L. TAYLOR<br>
*Attorney for Joshua Coghill*